Good morning, Your Honors. May it please the Court, my name is Robert Fischer. I represent the appellant, Robert Niebauer. I would request to keep a minute for rebuttal, please. Thank you. Good morning. The District Court erred in granting summary judgment to the defendants on both counts of Dr. Niebauer's complaint. I know there are a number of issues on the denial of benefits claim, and I'd like to begin with the procedural flaws that led to the Committee's decision on the denial of benefits. And specifically, Crane was obligated under terms of the plan to collect and provide to the Committee, the Compensation Committee, all pertinent documents. The record is undisputed that it did not do so. It retained its General Counsel, James Hackett. Mr. Hackett engaged in an effort which was designed to find documents that supported Crane's position. He admittedly withheld documents that supported Dr. Niebauer's position. And there are a couple of different examples in the record as to that point. For example, Dr. Niebauer met with a gentleman named Rick Kendall. He was the Vice President at Crane responsible for retirements. And the discussion with Mr. Kendall was not about whether Dr. Niebauer intended to retire, but was about getting a calculation from Towers Watson to determine whether or not, what his retirement benefits would be if in fact he chose to retire. There was a series of communications between Mr. Kendall and Dr. Niebauer, both telephonic and email. As part of his investigation, Mr. Hackett spoke with Mr. Kendall about his discussions. Mr. Hackett had all of the email, including a summary from Mr. Kendall about the communications. And rather than actually produce all the information about those communications, including the summary, Mr. Hackett plucked one document out, an email in which Dr. Niebauer referred to a February 1 date, a date about what date to use for the calculations, took that document, gave it to the committee, and then in a timeline, and we object to the timeline as well, asserted in the timeline that Dr. Niebauer had, quote, agreed to an, quote, official retirement date of February 1. At the point of the appeal, didn't all of this get in before the committee at the point of the appeal? No, not at all. Not at all. What was missing? So all of the communications between Mr. Kendall and Dr. Niebauer, except for the February 1 email, was missing. The Duquette email, in which Dr. Niebauer told a colleague that he hadn't retired, but in fact the company had retired him, that was withheld on the Dr. Niebauer's termination as, quote, retired involuntary. That was the, wasn't that as a result of what he himself said? That's the position that the defendants have taken in their brief and before the district court. But if you actually look carefully at the affidavit of Ms. Rondo on which it was based, it doesn't say that. She acknowledges that somebody in HR put the code in. She acknowledges that Dr. Niebauer took the position that he had been involuntarily retired. But nowhere in the affidavit does she actually connect those two things up to say that the reason why it was coded that way was because Dr. Niebauer said that. That is a fiction and it's not supported by the affidavit. So that was another document. Now, in their brief, defendants suggest, well, that was something that he never, that Mr. Hackett never uncovered. It was in the personnel file. An employer has an obligation to put in documents relating to the termination of an employee in a personnel file, but nobody bothered to look at the personnel file. So the investigation was based upon a subset of email, a limited record that didn't bear with all of the documents that was out there. For example, there was an email between Mr. Wickliffe and the CEO, Stephen DeFalco, dated December 16th, 8 o'clock in the morning. Mr. Wickliffe wrote to the CEO, Bob, Dr. Niebauer is adamant that he did not retire and does not want to retire. And he concludes the email by saying, if Dr. Niebauer chooses to retire, we should get a resignation letter from him. And in response to that email, the CEO called up Dr. Niebauer and said, today is your last day of employment. Now, the committee never thought about any of those issues and we can talk about that in a moment, the substance, but that's another email that was held back. And so there were a number of emails that never made it before the administrative appeal. Now the district court simply got it wrong. The district court thought, and I think it's on page 45 of the opinion, thought that Dr. Niebauer, as part of the administrative appeal, had the opportunity to put these documents in front of the committee. But he didn't. He didn't have access to his crane email. He didn't know it was withheld. The only way he found it was through court litigation. And it appears what happened was that in the discovery process, the court confused what was obtained during discovery against what was actually before the committee on the administrative appeal. What's the standard by which we should judge this kind of withholding of information claim? I mean, it seems to me the law can't be that if there are a hundred pieces of paper that are arguably relevant to an employee's claim and the committee gets sent 99 of them, that the single piece of paper that isn't sent, which may have only peripheral relevance, requires an automatic remand. Right? There's got to be some standard by which we judge the relevance of a withholding of documents. I agree, Your Honor. And I would, first of all, I'd say this is not the case where 99 documents were produced and none were withheld. What's the, there's got to be some case law on what the legal standard is. And I would submit that the analysis is what this court's already said, that the question is prejudiced. To the extent, you know, there's the DiGregorio case where the plan failed to give the entire personnel, the entire claims file. And in that case, the court said it didn't really matter because the issues that were actually before the plan and allowed her to perfect the claim and to perfect her claim were in the documents that were part of the, that were provided to her. So that if we were to conclude, let's just say hypothetically, that there was a withholding of documents, what would the question be? Would it be, would the question be, is it reasonable to think that the production of these documents at the time would have resulted in a different outcome before the committee? I don't think it goes so far as to say that it would be, it would be the burden of Dr. Neubauer to say that it would have resulted in a different outcome. No, I'm not talking about who has the burden. What I'm talking about is what the question should be. Then we can figure out who's got the burden of establishing the affirmative. I would submit that the question is the extent to which the omissions call into question whether the plan administrator gave a full and fair review of the claim. And in this case, I would say that they didn't because we know that what was before the committee was only what Crane sought to put in front of the committee. Well, wasn't the, initially, it appears if you at least, a fair reading of the record, was that he said he was going to retire. And then the argument is that within a very short period of time, he said, no, no, I'm not going to retire. I've changed my mind. And that your argument is that that I changed my mind information did not get to the committee. Is that not basically what you're arguing? That's part of it. I would take issue with the premise, which was that Dr. Neubauer initially said, I want to retire. Dr. Neubauer's testimony, what the record shows, was that he said, I'm at least considering retirement because of concerns that he had about the way the program was structured. And that, whether it was a miscommunication, whether Mr. DeFalco seized upon that, things rolled from there. I would submit to you that... Well, that wasn't the first time that he had raised the retirement issue, as I understand it, and the benefit from an involuntary retirement. Is that not true? I mean, there are certainly documents in the record that show that Dr. Neubauer had done things such as look at what his potential retirement benefit would be in the past. But the plan agrees that's not evidence of an intent to retire. Can I just understand how the retirement works in this company? So if I'm on the call with the CEO and I say, I'm retiring, have I retired? No. Dr. Neubauer had a conversation with Rick Kendall. Mr. Kendall's the vice president. He's the person that actually manages retirements at Crane. They had a conversation. Now, I would submit to you that in that instance, Dr. Neubauer was confused about what had happened. He said, can the CEO retire me? And Mr. Kendall said, no. There's a process. My question. I say to the CEO, I call up the CEO, I'm retiring. Have I retired? No. Okay, why not? Because there's a process. As Mr. Kendall informs Dr. Neubauer, there is paperwork that has to occur with HR. And even then, and it was absolutely clear, even then he has the right to back out of it at the last minute. That's what Mr. Kendall told Dr. Neubauer and that's what he relied upon. So I understand then all the evidence that you're saying was excluded would be potentially prejudicial if the issue is even if there was no miscommunication and he had said to the CEO in that first call, I'm retiring. There could have been a misunderstanding about whether that counted as a retirement and this other evidence would be relevant to whether, in fact, there was a retirement. But I guess two things on that. That's not really the argument you seem to be making in your brief. Is it? I can't quite tell what you're arguing. So, I mean, first, the issue is that it is the argument, Your Honor. That he did say I am retiring? No. Okay, so you don't contest. You contest whether he ever said I'm retiring to the CEO. We do. Okay, assume then you're wrong and he did say I'm retiring to the CEO. Okay. You don't make the argument because you seem to accept that you challenge whether he said I'm retiring. You don't make the argument that he admitted he was retiring in that first call, but that wasn't sufficient to count as a retirement. Is that right? Correct. Okay, since that's right, I'm having a little hard time giving your theory of what happened, why this other evidence is relevant. Because? You seem to accept, in the way that you're presenting the case, that if he said to the CEO I'm retiring, that would count as a retirement. Then you want this other evidence in, but I don't see why would that other evidence bear on whether he did or didn't say I'm retiring. Explain that. It bears on the question of whether or not he took affirmative steps to essentially say, whatever happened in that call, and let's assume it was a miscommunication, to correct that miscommunication. Within 24 hours of that call, Dr. Niebauer told at least three people, and we would say four, that he didn't want to retire. But that's not your, did you argue that to the district court? Because I thought your argument, as you argue it to us, is simply he never said he wanted to retire. We argued both points to the district court, Your Honor. Both issues before the court. Well, and you also have the e-mail to his daughter in which he says, I retired. Your Honor, the e-mail says what it says. That was an e-mail that was discovered through this court litigation. It wasn't a document that was before the committee. And under this court's Glista decision, it shouldn't be before this court, frankly. Well, wait a minute. It shouldn't be before this court. You were the party who requested additional discovery in this case. Correct. All right? And so now you're saying that you can go into the district court, request additional discovery, but when that discovery is produced, if it's not favorable to you, it can't be used in our decision? Well, as I understand the defendant's position, that this court should analyze the committee's decision under an arbitrary and capricious standard. Then there would never be any reason to have additional discovery in an ERISA case. I disagree with that, Your Honor. What reason would there be if it can't be used in analyzing the correctness of the committee's decision? And specifically, this case shows you why, which is there were documents that were missing. The only way to determine what was withheld and why it was withheld and what was the process was through court discovery. We were left, as the magistrate judge recognized, the administrative record was sparse. The decision that the committee issued on the appeal was inconsistent. On the one hand, it said that Dr. Niebauer had retired, and yet it cited to the disqualification language. You started out by arguing to us that there was a lot of information that didn't get in. And so I think to follow on what Judge Selye just said, you want to get the favorable information, which didn't get in, for us to consider, but the unfavorable information we shouldn't be considering. Your Honor, my point is only to the extent that the defendants want to rely on something that was produced in court litigation. That's all the more reason for a remand. All we're asking for is that Dr. Niebauer have a chance to have the committee look at all of the evidence, not the evidence that Mr. Hackett has chosen to supply to the committee, not the timeline that was inaccurate in a number of different respects. So would that include the daughter's email? I acknowledge it would be fair game on a remand. Can I ask you just about the 510 claim? Of course. So on the 510 claim, if I understand, is the claim basically a retaliation claim? Because he raised the severance issue, he was then essentially fired? The claim is the following, which is that in November there was a discussion between Dr. Niebauer and the CEO in which Dr. Niebauer asserted that he thought certain changes to his role constituted good reason under the plan. At the time of the termination discussion on the 16th, the CEO knew that Dr. Niebauer I don't really want to know the facts. I just want to understand, is the claim a retaliation claim? Yes, it is. Not a denial of benefits claim? Correct. Okay. And so in the issue we're raising before the court is the fact that the judge took what was essentially the denial of benefits arbitrary, the facts, deferred to the facts of the plan  Can you tell me what is the retaliatory action that was taken? The retaliatory action was the CEO, upon learning that Dr. Niebauer did not want to retire and was adamant that he wasn't going to retire, said today's your last day and undisputedly did so because he believed that Dr. Niebauer was trying to figure out a way to get severance. And that's the only retaliatory action that you're identifying? Correct. So the decision to construe that initial conversation as a retirement is not part of the retaliatory action? Correct. Okay. Thank you. May it please the court, David Casey and with me Rob O'Brien on behalf of Crane and its executive severance plan. Mr. Casey, can I ask you to start where the court just left off? Sure. Section 510 claim? Yes. As I understand it, the 510 claim is not subject to the administrative arbitrary and capricious standard of review. It's a claim on summary judgment where the district court was obligated to take all the facts in the record. Correct. Favorably to the plaintiff to the extent there were material facts in dispute. So how can the summary judgment be sustained? A couple of reasons. And by the way, that's why the letter or the email to the daughter was in the record because it's relevant to that issue. And the court found two things that were fatal to Mr. Niebauer's claim under the traditional summary judgment standard. Number one, there was overwhelming evidence that he voluntarily resigned. But overwhelming evidence, excuse me, overwhelming evidence doesn't cut it on summary judgment. No reasonable fact finder could find it. Well, the plaintiff has denied it. I mean, you know, you've got those old law book cases on summary judgment where, you know, 12 bishops swear the light was red, but one woman standing on the corner says it was green, and that's a question of fact for the jury. This is not unlike the evidence. I resigned and then subsequently tries to recant that in some fashion. And in those circumstances, this court has no difficulty issuing summary judgment or affirming summary judgment. That's what happened here. Is that true? I mean, how does that fit into the hypothetical I was asking about before? What counts as a retirement under your company? I say to the CEO, I'm retiring. Have I retired? Yes. Well, two things. Just that statement? Yes. Two things. He didn't merely retire. He resigned. He said, I'm done. My last day of work is two days from now. And he not only said that to the CEO, but he went in the next day and sent it to the head of human resources. What about the e-mail that suggested it has to be in writing? Is that not company policy? It's not company policy. And this, frankly, was the work of two longtime friends at the company trying to, as Mr. Niebauer wrote, candidly to an associate, trying to take advantage of the situation two weeks after he had resigned and the resignation had been effective. The district court didn't get into any of those set of issues. So just in terms of on summary judgment, what you characterize it as he's trying to recant something that was positive because of that e-mail to the daughter. But the district court didn't get into any of the issues about exactly what counts as a retirement, how a jury could review it if a full case was made. Instead, he seemed to rely on the fact that there was a benefits denial determination. I think he did. And I'd like to come back and catalog the evidence that he relied on that I think supports that conclusion in a moment. But I want to begin or step back and complete my answer to Judge Salia's question, which is the second basis for the affirmance of the 510 claim. And that is the 510 claim requires a showing of specific intent that not only did Falco terminate Niebauer, but he did so specifically to deprive him of benefits under the plan. No, that would be true if the theory was a denial of benefits claim under 510, but it's a retaliation claim. And the retaliation claim is because he sought severance, he was now being adversely treated. And I had thought the affirmative evidence of the intention to retaliate was the statement about severance. That's crazy talk. But that's my brother's characterization of the case. That's why it's summary judgment. We would let the jury figure that out. No, but the judge's finding is that Mr. Niebauer resigned. But the judge doesn't make findings at summary judgment. That's just the point. The judge simply looks at the evidence and determines is there a genuine issue of material fact. And he found that there wasn't based upon, and let me catalog it briefly. Niebauer says to the CEO, I'm resigning effective immediately. The next day, he goes in and he cleans out his office. And he writes numerous emails to various colleagues saying, among other things, my last day of work is Wednesday. He walks down the hall and he says to the Vice President of Human Resources, I've resigned and I want to work out my vacation pay and set an ultimate retirement date. And then he goes to the person who is managing this project momentum, trying to fix the most important problem that's confronting the company. And he says, I'm not going to be at those meetings that I'm a critical participant at for the next couple of days because of my pending retirement. Niebauer has said repeatedly, I'm gone. And he never comes back. And he never asks for his job back. And the court said that the committee was entirely within its discretion to find that on those facts, he had resigned, he had retired, and he did nothing to suggest that he ever wanted to come back. Except for all the evidence that was just being mentioned in those emails where it sounded like he was trying to figure out whether he should retire. Two weeks later, after he realized that the resignation had become effective and that the CEO was What's in the record that suggests it became effective? The CEO saying, I accept the resignation. And that counts under the policy? Do we have anything in the record that tells us at what point something becomes effective? A resignation as a matter of common law in the at-will context is effective when accepted. Then why does the company then negotiate with him about what the date of his retirement is going to be? If it was effective and effective immediately, that would have been the date of his retirement. This clearly grounds for an inference that it wasn't effective immediately. Do you want it to be effective February 1? Do you want it to be effective March 1? This is under the category of no good deed goes unpunished. They gave him an opportunity to take all of his vacation and to set a retirement date at the conclusion of that vacation. So if the retirement date wasn't set, how could the retirement be effective? The fact that he resigned and when he went to Mr. Wickliffe and said, oh no, I didn't really resign, there was a misunderstanding. Wickliffe says to him, if you want your job back because DeFalco believes that you've resigned. And by the way, Mr. Niebauer conceded in deposition and the judge relied on this that DeFalco reasonably believed that Niebauer had resigned. Niebauer doesn't dispute that, which is fatal to the specific intent dimension of the 510 claim. Niebauer recognizes that DeFalco believed he had retired. Wickliffe says to him, if you want your job back, you've got to go to the CEO and tell him that. Because he's already told people down in Fort Worth that you're gone. Niebauer does not go to the CEO. He doesn't write him an email. He doesn't pick up the phone. He doesn't go to his office. In fact, it is DeFalco who calls Niebauer. And when he gets him on the phone, Niebauer doesn't say there's a big misunderstanding and I want my job back. Niebauer is once again showing what he's been trying to do all along, leave but leverage a severance under the policy. He says, I never intended to resign. DeFalco said, you're not telling me you want your job back. You have resigned. Go ahead. Are you also saying to us that if I look at the various plans, the retirement plan and this special IHAT plan, that I'm going to find nothing in those plans which discusses how you retire? It's not about retirement. It's about resignation. Did he choose voluntarily to leave his employment? I really argue he resigned. Correct. And therefore, whatever's in the plan is not relevant. Correct. Exactly. Well, if I have a different view of the record, will I find anything in the plans which discuss how one retires? No. The plan speaks in terms of voluntary or involuntary termination of employment. And the question here, which the committee found and which the trial judge found was not arbitrary and capricious, was that Niebauer resigned. Did the committee find that? I thought the committee found he had retired. They used the terms interchangeably. They also referenced resignation. They referenced resignation, but I don't think it's a fair reading of the committee's decision to say that they found he resigned. No, they say that he voluntarily terminated his employment. Does your case turn out whether it was a determination about resigning or retiring? I don't think it's material. I think it's the same thing. Okay. So then we should just treat it as retirement. This man said to his boss. Does that mean we should just treat it as retirement? Because it sure sounds like there's at least a fact question as to whether it was a resignation or retirement. It doesn't seem super helpful to you. He retired. He resigned and commenced his retirement and did nothing to ever stop that process. After he recognized and wrote candidly to his wife, we can kiss the severance option goodbye, which is the issue that brings us to this moment. He writes candidly to his wife, we can kiss the severance option goodbye because of the triggering events, his voluntary resignation slash retirement. Once he realizes that he has lost his opportunity to get this nearly million-dollar severance payment, then he tries to put the company in a box where it is appearing to involuntarily terminate him. He's straddling the fence. He's not saying I want my job back. He's just saying you have retired. On the 510 Retaliation Claim, counsel for Niebauer, if I understood it right, says that the theory of retaliation is that the retaliatory act was setting the retirement date earlier than Niebauer asked for it to be. Who, in your account, set the retirement date? It was done jointly. The company set the last date of employment. They basically said, you've resigned. We are not going to allow you to stay on our books ad infinitum. Your last day of employment is January 16th. So the company determined. So just if I have a hypothetical, I say I'm resigning, and I'm imagining that's going to be in three months. If the company now sets it at one month, is that, do we have anything in the record that tells us whether the company has complete discretion as to what date to set it at? What you have is case law that says, and we cite it in our brief, that if an employee says I'm resigning in five months or in six years, the employer has the latitude to say no. If you're resigning, we're going to make that a week from today. And those are retaliation cases? No, those are common law employment cases. But in the context of a retaliation case, could that be a retaliatory measure? In other words, you resign, but I'm mad about how you're acting, and so my way of punishing you for having sought severance would be to move up your retirement date three months. But the date of the retirement is not what's relevant here. The fact of retirement is what's relevant here. Not for the 510 claim. Yes, it is. The plaintiff's claim is that but for your forcing my retirement, I would not have retired. That's his thesis. No, I thought the 510 claim was but for the fact that I asked for severance, you would not have moved up my retirement date. But there's no damage associated with that. That's not his claim. His claim is you forced me into an involuntary departure from work, which entitles me to severance under the plan. That's his theory. And that's the only viable theory. But there's nothing to prohibit management from saying once you've resigned, we will, in our judgment, determine when your last day of official work is, which is exactly what happened here. If there are no further questions, thank you. Thank you. Just briefly, Your Honor. Counsel, perhaps you can clarify exactly what your retaliation claim is. Sure, absolutely. We are not suggesting that his damages would be severance under the plan. The claim is that the company essentially retired him on December 16 because he had raised the specter of severance when he alleged that potentially a good reason. That's the claim. It's a standard retaliation claim. The damage would be whatever back pay that would flow from that. That is the claim. Mr. Casey suggested that the parties jointly decided a retirement date. There is not a single piece of evidence in the record to support that statement. The only evidence is that Mr. Hackett misrepresented that fact to the committee and the committee relied upon it. So the notion that there was an accretive on date is not correct, and to the extent the court is asking what the policy was, the evidence in the record is what Mr. Kendall said it was. Do you have any authority that moving up the retirement date can be a retaliatory act, given that I take it employers generally have some discretion about setting what the retirement date would be? We have not located such a case, Your Honor, specifically in that point.